# Pennsylvania Railroad Company *v.* M. O. Coggins Company, Appellant.

*Constitutional law—Interstate commerce—Storage of goods in cars—Carriers—Railroads—Act of May* 24, 1907, *P. L.* 229.

1. The Pennsylvania Act of May 24, 1907, P. L. 229, providing maximum car service charges, including car storage charges, that railroad companies may impose, is invalid as to goods and cars engaged in interstate commerce, in view of the fact that congress has legislated on the subject by the federal acts of February 4, 1887, 24 Stat. at Large, 379, and June 29, 1906, 34 Stat. at Large, 584.

2. When goods are shipped from one state into another and upon arrival at their destination remain in the cars placed upon public sidings, they continue a part of the interstate commerce transaction until unloaded.

3. A state has no power to prescribe that a consignee, who has received a car the property of a common carrier of another state containing goods which have been consigned from another state, shall have practically three days of free time within which to unload the car and shall, if he wishes, have the right to retain the car, while standing upon the public sidings of the final carrier, for an indefinite period upon payment for the same at the rate of $1.00 per day.

Argued April 29, 1908. Appeal, No. 201, April T., 1908, by defendant, from judgment of C. P. No. 3, Allegheny Co., Nov. T., 1907, No. 131, for plaintiff on case stated in suit of Pennsylvania Railroad Company v. M. O. Coggins Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Case stated to determine liability for storage charges. Before EVANS, J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment·for plaintiff on the case stated.

*T. P. Trimble,* of *Trimble & Chalfant,* for appellant.—The contention of the appellant is that after the produce arrives at its destination, and the cars containing it are placed on a public

siding subject to the appellant's control, the jurisdiction of the federal government over the same is at an end and the jurisdiction of the state government attaches: Diamond Match Co. v. Ontonagon, 188 U. S. 82 (23 Sup. Ct. Repr. 266); Kelley v. Rhoads, 188 U. S. 1 (23 Sup. Ct. Repr. 259); Pittsburg & Southern Coal Co. v. Bates, 156 U. S. 577 (15 Sup. Ct. Repr. 415); Pennsylvania R. R. Co. v. Knight, 192 U. S. 21 (24 Sup. Ct. Repr. 202).

After a carrier has transported goods to their destination and given the consignee a reasonable time to remove the same, his character under the law as a carrier ceases and henceforth he is a warehouseman: United Fruit Company v. New York & Baltimore Transportation Company, 65 Atl. Repr. 415; McCarty v. Railroad Company, 30 Pa. 247; Illinois Central Railroad Company v. Frankenberg, 54 Ill. 88; Moyer v. Pennsylvania Railroad Co., 31 Pa. Superior Ct. 559; Shenk v. Propeller Company, 60 Pa. 109.

And it makes no difference whether the goods are stored in a warehouse or remain in cars: Chicago, etc., Ry. Company v. Reyman, 73 N. E. Repr. 587; Gratiot Street Warehouse Company v. St. Louis, A. & T. H. Railway Co., 221 Ill. 418 (77 N. E. Repr. 675); Independence Mills Company v. Burlington, etc., Ry. Co., 72 Iowa, 535 (34 N. W. Repr. 320); Becker v. Pennsylvania Railroad Co., 96 N. Y. Supp. 1; Walters v. Detroit United Railway Company, 102 N. W. Repr. 745.

The supreme court of the United States has decided that a state may regulate under its police power the rates charged by a warehouseman on goods shipped in from other states: Munn v. Illinois, 94 U. S. 113.

The state has the undoubted right to regulate the rates and charges of carriers within its own territorial limits, even though such regulations may remotely affect interstate commerce, provided always, that it does not impose a direct burden on such commerce: Covington, etc., Bridge Company v. Kentucky, 154 U. S. 204 (14 Sup. Ct. Repr. 1087); R. R. Commission Cases, 116 U. S. 307 (6 Sup. Ct. Repr. 334); Louisville, etc., R. R. Co. v. Kentucky, 161 U. S. 677 (16 Sup. Ct. Repr. 714); Dow v. Beidelman, 125 U. S. 680 (8 Sup. Ct. Repr. 1028); Ruggles

v. Illinois, 108 U. S. 526 (2 Sup. Ct. Repr. 832); C., B. & Q. R.
R. Co. v. Iowa, 94 U. S. 155; Winona, etc., R. R. Co. v. Blake,
94 U. S. 180.

*James R. Miller,* with him *Patterson, Sterrett & Acheson,* for
appellee.—Congress has acted on the subject of storage charges:
Interstate Commerce Commission v. Detroit, Grand Haven,
etc., Ry. Co., 167 U. S. 633 (17 Sup. Ct. Repr. 986); American
Warehousemen's Assn. v. R. R. Co., 7 I. C. R. 556; Blackman
v. R. R. Co., 10 I. C. R. 352.

The words "storage charges" in the interstate commerce act
must be construed to mean storage charges such as are in-
volved in this case: Penna. Millers' State Assn. v. Phila., etc.,
Ry. Co., 8 I. C. R. 531; American Warehousemen's Assn. v.
R. R. Co., 7 I. C. R. 556; Houston, etc., Ry. Co. v. Mayes, 201
U. S. 321 (26 Sup. Ct. Repr. 491); McNeill v. Ry. Co., 202 U. S.
543 (26 Sup. Ct. Repr. 722); Brown v. Maryland, 25 U. S. 419;
Leisy v. Hardin, 135 U. S. 100 (10 Sup. Ct. Repr. 681); Austin
v. Tenn., 179 U. S. 343 (21 Sup. Ct. Repr. 132).

Demurrage, storage, switching, etc., are all terminal charges,
jurisdiction of which is plainly given by the act to the interstate
commerce commission. Storage is only another kind of de-
murrage charge. The demurrage charges, as well as the storage
charges, do not start until after forty-eight hours have elapsed.
If it is to be held that the words "storage charges" do not
mean storage at the point of destination, it must also be held
that the word "demurrage" in the act does not mean demur-
rage at the point of destination. It has been held by the com-
mission that the commerce act covers demurrage, storage and
terminal charges, and the disposition of cars in connection
with interstate shipments in the following cases: Riddle v.
Pittsburg & L. E. R. R. Co., 1 I. C. R. 374; Riddle v. N. Y., L.
E. & W. R. R. Co., 1 I. C. R. 594; Heck v. R. R. Co., 1 I. C. R.
495; Independent Refiners' Assn. v. W. N. Y. & P. R. R. Co.,
4 I. C. R. 162; Cattle Raisers' Association v. Fort Worth &
Denver City Ry. Co., 7 I. C. R. 513; American Warehousemen's
Association v. Ill. Central R. R. Co., 7 I. C. R. 556; Pennsyl-
vania Millers' State Association v. P. & R. Ry. Co. et al., 8 I.

C. R. 531; Palmer's Dock, Hay, etc., Board of Trade v. Penna. R. R. Co., 9 I. C. R. 61.

If congress has legislated in respect to such storage charges, the act of assembly of Pennsylvania in question is in conflict with the provisions of the law of the United States: Wabash, etc., Ry. Co. v. Illinois, 118 U. S. 557 (7 Sup. Ct. Repr. 4); Bowman v. Ry. Co., 125 U. S. 465 (8 Sup. Ct. Repr. 689); Gulf, etc., Ry. Co. v. Hefley, 158 U. S. 98 (15 Sup. Ct. Repr. 802); Interstate Commerce Commission v. Detroit, etc., Ry. Co., 167 U. S. 633 (17 Sup. Ct. Repr. 986).

The Act of assembly, approved May 24, 1907, P. L. 229, which provides a maximum rate for car storage charges by railroad companies, imposes a burden on interstate commerce: Houston, etc., Ry. Co. v. Mayes, 201 U. S. 321 (26 Sup. Ct. Repr. 491); McNeill v. Ry. Co., 202 U. S. 543 (26 Sup. Ct. Repr. 722); Central of Georgia Ry. Co. v. Murphey, 196 U. S. 194 (25 Sup. Ct. Repr. 218).

OPINION BY PORTER, J., February 26, 1909:

The plaintiff seeks to recover from the defendant charges for storage of goods in cars, which had been at different times consigned to the defendant company, in car load lots, from various points without the state of Pennsylvania, and had by the plaintiff company been carried over its lines during the final stage of such interstate transportation to the point of destination at Pittsburg, where said cars were duly placed upon the public sidings of the plaintiff railroad ready for unloading, and the defendant company, being duly notified, failed to unload the several cars, respectively, and retained said cars upon the public sidings of the plaintiff company during periods in excess of the time allowed for such unloading. The said charges are in accordance with a schedule which had been duly printed by the plaintiff, kept open for public inspection, and filed with the interstate commerce commission, as required by the act of congress approved February 4, 1887, 24 Stat. at Large, 379, entitled "An Act to Regulate Commerce," and its supplements and amendments. The parties joined in an agreement as to the facts, which was filed, in the nature of a case stated, in the court

below, among the facts agreed upon were the following: "All the goods shipped to the defendants in the cars shown in the said 'Exhibit A' were shipped subject to the schedule of charges shown on said 'Exhibit B,' and as said cars were not unloaded within forty-eight hours after they were placed as aforesaid, Sundays and legal holidays excluded, it became the duty of the defendant to pay the plaintiff the compensation hereinafter stated." It is admitted that the defendant is liable for the amount claimed if such charges were subject to the provisions of the legislation by congress regulating interstate commerce. The defendant contended that the charges were subject to the provisions of the Act of the general assembly of Pennsylvania, approved May 24, 1907, P. L. 229, entitled: "An act to provide the maximum car service charges, including car storage charges, that railroad companies and corporations, or associations, may charge and collect on each car loading, and not unloaded within the free time for unloading cars," etc. This Pennsylvania statute allows a longer free time for unloading cars and fixes a less rate per day, in case of an excess of such free time, than that provided for by the schedule published by the plaintiff company and filed by it with the interstate commerce commission. The question presented is, whether the charges, when applied to goods and cars which had been consigned from points without the state and had by continuous transportation reached their destination within the state, were subject to state control or regulation. The court below held that the statute of the state was, as to the goods and cars which were engaged in interstate commerce, invalid, and entered judgment in favor of the plaintiff. The defendant appeals.

The opinion filed by the learned judge of the court below, which appears in the report of this case, vindicates his conclusion that congress has at least attempted to provide a manner in which charges of this kind by a railroad engaged in interstate commerce shall, as to such interstate transportation, be regulated. The act of congress entitled: "An act to amend an act entitled, 'An Act to Regulate Commerce,' approved February 4th, 1887, 24 Stat. at Large, 379, and all acts amendatory thereof, and to enlarge the powers of the Interstate Commerce

Commission," approved June 29, 1906, 34 Stat. at. Large, 584, defines "transportation," an essential branch of interstate commerce, in such a manner as to include all the services incidental to such transportation by the carrier, from the time the loading of a car begins until the unloading thereof is completed. It explicitly provides that "all services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration or icing, storage, and handling of property transported shall be included in the term transportation," and requires that every carrier subject to the provisions of the act shall furnish such transportation upon reasonable request. The act further provides that, "Such carriers shall publish and file with the Commission and keep open to public inspection schedules which shall . . . . state separately all terminal charges, storage charges, icing charges," etc. The appellant contends that the term "storage," "as used in the Hepburn act, means such storage as may become necessary while the shipment is in transit and before it arrives at its ultimate destination." This contention finds no support in the terms of the act of congress, which manifestly intended to deal with all charges for services incidental to the transportation involving interstate commerce. The storage of goods, either in the cars or in a warehouse, upon their arrival at the destination to which they are consigned is a usual and ordinary incident of every transaction involving interstate commerce. The congress was dealing with existing conditions and in this act the term "storage" is used in direct connection with terminal charges, clearly indicating an intention to provide for the regulation of charges for those services to be rendered by the carrier after the mere movement of the goods had come to an end, and before delivery had been actually completed. When goods are shipped from one state into another and upon arrival at their destination placed upon the platform of the carrier, their removal from the platform to the freight warehouse is a part of the interstate commerce transaction: Rhodes v. Iowa, 170 U. S. 412.

The constitution of the United States vests in congress the power "to regulate commerce with foreign nations and among

the several states and with the Indian tribes." Transportation is an important branch of all commerce, and without the power to regulate the manner of introduction of goods into a state the power to regulate the mere transactions of buying and selling would be of little practical importance. Commerce between the states necessarily implies the passing of property from one state to another, and this movement of goods, whether it be done by the owner thereof or through the agency of a common carrier, is subject to congressional control and regulation. The exchange of goods between the merchants of the different states is, when the shipments are in car load lots, more conveniently and advantageously effected when the transportation is continuous, the cars being loaded by the consignor in one state and the car with its contents being moved over the lines of several carriers to its destination in another state. The transportation of goods in this manner is so manifestly advantageous that it has not only come to be the usual course of business, but legislation by congress and by many of the states has been enacted in order to facilitate it or, in many cases, to require common carriers to adopt it. When a shipment is made in this manner it must very frequently, if not generally, result in the car, which is owned by a carrier domiciled in another state from which state the car has in that transaction been consigned and to which state it is to be returned, being placed upon the public sidings of the final carrier, there to be unloaded by the consignee. The cars which are the property of a railroad are thus scattered all over the country. This case illustrates that fact. Exhibit "A" attached to the case stated indicates the number of each car and the initial letters of the railroad owning the same, and out of fifty-five cars only one was the property of this plaintiff company. These cars owned by corporations domiciled in other states and there engaged in business as carriers were, respectively, sent into Pennsylvania from other states carrying goods consigned to the defendant corporation, a citizen of Pennsylvania, at Pittsburg, and were by the plaintiff company, which completed the interstate transportation, placed upon its public sidings in the city of Pittsburg, for the purpose of being unloaded by the defendant company in accordance

with the terms of the interstate transportation. It cannot with any reason be contended that the unloading of the cars was not a necessary incident of the interstate transportation. If the interstate character of the transaction ceased the moment the car reached the point on the public siding where it was to be unloaded, as contended by the appellant, and the power of congress to regulate the transaction there absolutely ceased, then it is not within the power of congress to so regulate commerce between the states that all shippers and consignees shall be treated upon like terms by common carriers engaged in interstate commerce. If the contention of appellant is well founded, the carrier might, free from congressional interference, as soon as a car reaches the point upon its siding where it is to be unloaded, permit one consignee to retain the car for the storage of his goods free from any charge whatever, the company continuing to ice the car and grant any other favors that it saw fit, while charging other consignees at exorbitant rates for all services rendered.

The appellant relies, in support of its proposition that congressional control of the transaction ceases and state control supervenes when the car reaches the point upon the public siding where it is unloaded, upon several decisions by the supreme court of the United States. The cases of the Diamond Match Company v. Ontonagon, 188 U. S. 82; Kelley v. Rhoads, 188 U. S. 1; Pittsburg & Southern Coal Company v. Bates, 156 U. S. 577, and Pennsylvania Railroad Co. v. Knight, 192 U. S. 21, presented only the question of the power of the state to tax property which had been brought into the state and was for an indefinite time at rest, awaiting transportation or sale, and it was held that a state might tax the property which was receiving the protection of its laws although the property was the subject of interstate commerce, in a manner which did not impose a direct burden upon such commerce. The distinction between the power to tax goods which are the subject of commerce and the power to regulate interstate commerce is distinctly recognized and commented upon in American Steel & Wire Company v. Speed, 192 U. S. 500. The case of Munn v. Illinois, 94 U. S. 113, arose under a statute of the state of Illinois

prescribing the maximum rate to be charged by warehouses of Chicago for the storage of grain, and it was there held that while the warehouses might incidentally become connected with interstate commerce they were not necessarily so connected and that the regulation did not involve an intrusion upon the power of congress to regulate commerce between the states. The principles recognized in these decisions are not of controlling force in the question here presented. The cars in question were necessarily connected with interstate commerce and were at the time it was sought to apply to them the regulation of this Pennsylvania statute actually engaged in interstate transportation. The question here presented is, has the state of Pennsylvania power to prescribe that a consignee, who has received a car the property of a common carrier of another state containing goods which have been consigned from another state, shall have practically three days of free time within which to unload the car and shall, if he wishes, have the right to retain the car, while standing upon the public sidings of the final carrier, for an indefinite period upon payment for the same at the rate of $1.00 per day? That such a law is a direct regulation of the final incident of all transportation would seem to be too clear for argument.

The national and state acts clearly relate to the same subject-matter and prescribe different rules. The national statute makes the tariff published by the carrier and filed with the interstate commerce commission the binding rate, and subjects the carrier to severe penalties in case it "charge or demand or collect or receive a greater or less or different compensation," while the state statute prescribes a different rate and makes it unlawful for the carrier to collect more. The carrier cannot obey one statute without violating the other. "When a state statute and a federal statute operate upon the same subject-matter, and prescribe different rules concerning it, and the federal statute is one within the competency of congress to enact, the state statute must give way:" Gulf, Colorado & Santa Fe Railway Company v. Hefley, 158 U. S. 98. Charges for storage in cars, actually engaged in interstate transportation, are a part of interstate commerce, which it is within the power of

congress to regulate. The act of assembly of Pennsylvania in question constitutes a regulation of interstate commerce and is invalid and inoperative, in respect to charges for storage in cars engaged in interstate transportation: Bowman v. Chicago & Northwestern Railway Company, 125 U. S. 465; Interstate Commerce Commission v. Detroit, Grand Haven & Milwaukee Railway Company, 167 U. S. 633; Houston & Texas Central Railroad Company v. Mayes, 201 U. S. 321; McNeill v. Southern Railway Company, 202 U. S. 543; Swift & Co. v. United States, 196 U. S. 375; Wabash, St. Louis & Pacific Railway Company v. Illinois, 118 U. S. 557; Central of Georgia Railway Company v. Murphey, 196 U. S. 194.

The judgment is affirmed.