(January 27, 1927.)

J. A. COLE and F. W. MUELLER, Doing Business as BIG BEND FEED COMPANY, Respondents, v. NORTHERN PACIFIC RAILWAY COMPANY, a Corporation, Appellant.

[252 Pac. 406.]

COMMERCE—INTERSTATE SHIPMENT—REGULATION.

Where it was originally intended that cars shipped from out the state should be spotted for unloading at consignee's warehouse on a team and industrial track of a railroad company, the movement of them there by such company from the interchange track in the city on which they had been placed for such switching by another railroad company which had brought them that far was part of the interstate shipment, and therefore within the exclusive control of the Interstate Commerce Commission, so that order of the state Public Utilities Commission that the switching be done at certain rates was not within its power under C. S., sec. 2458.

Publisher's Note.

Transportation by independent railroad operating entirely within single state of freight shipped from or to points without state as interstate commerce, see note in 13 Ann. Cas. 905. See, also, 5 R. C. L. 708.

See Commerce, 12 C. J., sec. 24, p. 25, n. 69, 70.

APPEAL from order of Public Utilities Commission.

Order set aside.

Hawley & Hawley, Geo. T. Reid and L. B. da Ponte, for Appellant.

Carloads of coal or other commodities moving from Utah or Idaho via Spokane, Washington, for delivery at Coeur d'Alene, Idaho, are in interstate commerce until placed on the track at the warehouse for unloading, and consequently the Utilities Commission was without jurisdiction. (*Illinois Cent. R. Co. v. De Fuentes,* 236 U. S. 157, 35 Sup. Ct. 275, 59 L. ed. 517; *McNeill v. Southern R. Co.,* 202 U. S. 543, 26 Sup. Ct. 722, 50 L. ed. 1142; *Western Union Tel. Co. v. Foster,* 247 U. S. 105, 1 A. L. R. 1278, 38 Sup. Ct. 438, 62 L. ed. 1006; *Kelly v. Rhoads,* 188 U. S. 1, 23 Sup. Ct. 259, 47 L. ed. 359.)

The regulation of interchange of cars between interstate carriers in terminals, or otherwise, is a matter within the exclusive jurisdiction of the Interstate Commerce Commission. (*Alabama & V. R. Co. v. Jackson & E. R. Co.,* 271 U. S. 244, 70 L. ed. 928.)

Harold S. Purdy, for Respondents.

Where a shipment starts in one state and ends in another it is interstate commerce; but when the commodity transported has reached the termination of its journey and has been delivered to the consignee, it ceases to be a subject of interstate commerce, and the subsequent shipment from the point at which it has been delivered to another point in the state is an intrastate shipment. (*Gulf, Colorado & Santa Fe Ry. Co. v. State of Texas,* 204 U. S. 403, 27 Sup. Ct. 360, 51 L. ed. 540; *Chicago, M. & St. P. Ry. Co. v. Iowa,* 233 U. S. 334, 34 Sup. Ct. 592, 58 L. ed. 988; *Coe v. Errol,* 116 U. S. 517, 6 Sup. Ct. 475, 29 L. ed. 715; *Ft. Worth & D. C. R. Co. v. Whitehead,* 6 Tex. Civ. App. 595, 26 S. W. 172; *Cincinnati, N. O. & T. P. R. Co. v. Interstate Commerce*

*Com.*, 162 U. S. 184, 16 Sup. Ct. 700, 40 L. ed. 935; *Railroad Com. v. Worthington*, 225 U. S. 101, 32 Sup. Ct. 653, 56 L. ed. 1004; *Texas & N. O. R. Co. v. Sabine Tram Co.*, 227 U. S. 111, 33 Sup. Ct. 229, 57 L. ed. 442; *Pennsylvania R. Co. v. Mitchell Coal & Coke Co.*, 238 U. S. 251, 35 Sup. Ct. 787, 59 L. ed. 1293.)

BUDGE, J.—Respondents are engaged in the fuel and feed business at Coeur d'Alene. On November 18, 1925, they filed a complaint with the Public Utilities Commission alleging that while in times past appellant had received cars from the transfer tracks of other railroads in the city of Coeur d'Alene for switching to a side-track owned by appellant adjacent to respondent's warehouse, it had on and since July 1, 1925, refused to render this service. An order was prayed for requiring appellant to continue its former practice in the matter of switching these cars. The answer of appellant admitted the former practice but alleged that it was done through inadvertence in that the track adjacent to respondents' warehouse was a "team track" and a part of appellant's terminals at Coeur d'Alene for its own business; that the switching rates provided in its tariffs do not apply to such track; and that the shipments for which respondents desired the use of appellant's tracks were interstate shipments subject to the jurisdiction of the Interstate Commerce Commission.

It appears without controversy that the cars respondents sought to have switched to their warehouse for unloading contained coal moving from Utah points via the Oregon-Washington R. & N. Co. to Spokane and thence via the Spokane & Eastern Railway & Power Co. to Coeur d'Alene, and by the latter company placed on the interchange track for switching to respondent's warehouse.

The commission found that the track adjacent to respondents' warehouse was both a team and industrial track, and that when the cars arrived at Coeur d'Alene over the line of the Spokane & Eastern Railway & Power Co., the original carriage was then complete and the movement from the

terminal of the electric line to respondents' warehouse was independent of the main haul and intrastate and purely local in character.   The commission further found that even if the switching of a car to respondents' warehouse on the track of appellant be regarded as part of an interstate shipment, the service was of such local nature as to be within the power of the commission to regulate.

C. S., sec. 2458, provides that:

"Whenever the commission, after a hearing had upon its own motion or upon complaint, shall find that the public convenience and necessity would be subserved by having connections made between the tracks of any two or more railroad or street railroad corporations, so that the cars may readily be transferred from one to the other, at any of the points hereinafter in this section specified, the commission may order any two or more such corporations owning, controlling, operating, or managing tracks of the same gauge to make physical connections at any and all crossings, and at all points where a railroad or street railroad shall begin or terminate or run near to any other railroad or street railroad.   After the necessary franchise or permit has been secured from the city and county, or city or town, the commission may likewise order such physical connection, within such city and county, or city or town, between two or more railroads which enter the limits of the same.   The commission shall by order direct whether the expense of the connections referred to in this section shall be borne jointly or otherwise."

In construing the above section the commission held that it had authority to require physical connection between the tracks of two or more railroads entering the same city or town within the state, and that it necessarily followed that it had the authority to require an exchange of service between any two or more lines where there was a physical connection or where one had been required to be made.   Based upon this statute and the facts as disclosed by the record, and its own findings, the commission entered its order requiring appellant, upon request of respondents and pay-

ment of a switching fee of $6.75, to switch and transfer carloads of freight from the tracks of all common carriers with which appellant has physical connection in the city of Coeur d'Alene to the warehouse of respondent located upon the terminal side-track of appellant in said city of Coeur d'Alene.

Upon the appeal, properly taken, it is contended that the commission erred in entering the order above referred to, in that:

1. The traffic was interstate commerce subject to the exclusive jurisdiction of the Interstate Commerce Commission pursuant to art. 1, sec. 8 of the federal constitution.

2. The Interstate Commerce Commission has exclusive jurisdiction over terminal service and interchange of cars between carriers engaged in interstate commerce, pursuant to art. 1, sec. 8 of the federal constitution and the act to regulate commerce, as amended.

Art. 1, sec. 8, of the United States constitution provides, among other things, that "The Congress shall have power to .... regulate commerce .... among the several states. ...."

It must be conceded that the shipment involved herein was an interstate shipment. The pivotal point is, Did the shipment retain its interstate character until it came to rest on the track at the warehouse of respondents for unloading? If it did, the Public Utilities Commission was without jurisdiction, and the right to regulate said shipment rested exclusively with the Interstate Commerce Commission; while, upon the other hand, if the shipment, after it reached the terminal or depot of the Spokane & Eastern Railway & Power Co. in Coeur d'Alene, ceased to be an interstate shipment and became intrastate, the Public Utilities Commission had authority to make the order.

The general rule would seem to be that where a shipment has actually started for its destination in another state and has acquired the impress of interstate commerce, it retains its character as an interstate shipment until the completion of the service by the last movement, and this is generally

held to include the switching of cars and delivery to the consignee at the terminal point. *Illinois Cent. R. Co. v. De Fuentes*, 236 U. S. 157, 35 Sup. Ct. 275, 59 L. ed. 517; *Mc-Neill v. Southern R. Co.*, 202 U. S. 543, 26 Sup. Ct. 722, 50 L. ed. 1142; *United States v. Illinois Cent. R. Co.*, 230 Fed. 940; *Barrett v. New York*, 183 Fed. 793; *United States v. St. Joseph Stockyards Co.*, 181 Fed. 625, holding that the transportation of cattle from a point in another state to the chutes at the stockyards at South St. Joseph, Mo., is a continuous shipment, all of which, including the transportation by the stockyards company over its own tracks, is of an interstate character; *Pennsylvania R. Co. v. M. O. Coggins Co.*, 38 Pa. Super. Ct. 129, holding that, where goods on arrival at their destination remain in the cars placed on public sidings, they continue a part of interstate commerce until unloaded and removed to the warehouse.

C. S., sec. 2458, *supra*, when construed in connection with art. 1, sec. 8, of the federal constitution (and holdings of the United States supreme court thereunder), empowers the Public Utilities Commission to require physical connections between lines for the purpose of intrastate shipments only, and in no way enlarges the jurisdiction of the commission so as to include interstate shipments. The Interstate Commerce Commission has exclusive control over all interstate shipments and until they come to rest at the final point of delivery, whether switching movements or otherwise, and this is particularly true where it appears that the parties originally intended that cars should be spotted at a designated place, which would require their handling by a common carrier engaged in interstate commerce. It is undisputed in the instant case that respondents originally intended that the cars should be spotted at their warehouse for unloading. To carry out this intention the movement could not be completed until the cars were so spotted by appellant railway company, and in the doing of which it would be engaged in interstate commerce.

The order of the commission must be set aside, and it is so ordered. Costs to appellant.

Taylor and T. Bailey Lee, JJ., concur.

GIVENS, J., Dissenting.—The commission found that the business or industry of the shipper was permanently located on an industry track of the railroad at Coeur d'Alene. The railroad admits the sufficiency of the evidence to sustain this finding. Rule No. 6 of the Northern Pacific Tariff, 91–G, Public Utilities Commission of Idaho No. 467, I. C. C. No. 7535, provides as follows:

"Rule No. 6. The switching rates named in Sections 1, 2 and 4 of this tariff applying from track connections with other lines cover business handled to or from connecting lines for the accommodation and benefit of industries located upon this company's tracks, and will apply only when shipments are forwarded or received by the owner of a warehouse or industry permanently located upon this company's tracks."

It follows, therefore, that the order merely directs the railroad to do that which its tariff rules provide.

The majority opinion treats of the order of the Public Utilities Commission as applying to past shipments. Conceding solely for the sake of argument that such be the proper application, there is no difference in principle between the facts as disclosed by the record and the facts considered in *Chicago, M. & St. P. Ry. Co. v. Iowa*, 233 U. S. 334, 34 Sup. Ct. 592, 58 L. ed. 988, wherein the supreme court of the United States sustained the Iowa state supreme court and the Iowa State Railroad Commission in holding that the shipments in question were intrastate shipments.

The order on its face applies to future shipments only and such decision is thus complete authority for sustaining the action of the commission, the court saying:

"In the light of its decision, the order of the Commission must be taken as referring solely to intrastate transportation originating at Davenport."

The plaintiff having failed to establish any ground for invalidating the order of the commission, the same should be affirmed.

I am authorized to say that. Wm. E. Lee, C. J., joins in this dissent.

Petition for rehearing denied.