THE STATE, THE PENNSYLVANIA RAILROAD COMPANY, PROSECUTOR, v. THE MAYOR AND ALDERMEN OF JERSEY CITY.

The relators have erected a grain elevator on a portion of the lands conveyed to the United Railroad Companies of New Jersey by the act of March 30th, 1868 (*Pamph. L.*, p. 551). *Held*, that under the provisions of said act the elevator is not subject to assessment for municipal taxation.

On *certiorari*. In matter of tax.

Argued at February Term, 1887, before Justices VAN SYCKEL, MAGIE and PARKER.

For the plaintiff, *J. B. Vredenburgh.*

For the defendants, *R. B. Seymour.*

The opinion of the court was delivered by

VAN SYCKEL, J.  This *certiorari* is brought to review an assessment for taxes for the years 1881 and 1882 on parts of blocks 78 and 79, in size two hundred and six feet by one hundred and forty-six, in Jersey City.

These lands were conveyed by the State of New Jersey to the United Railroad and Canal Companies by an act of the legislature entitled " An act to enable the United Railroad and Canal Companies to increase their depot and terminal facilities at Jersey City," passed March 30th, 1868.  *Pamph. L., p.* 551.

In this conveyance the lands conveyed, of which the above blocks are part, are " granted to said United Companies, their successors and assigns, to hold in the corporate name of the said New Jersey Railroad and Transportation Company, or otherwise," and it is thereby declared "lawful for said grantee to fill up and improve said property, and erect thereon wharves, piers, canals, slips, storehouses, depots and other buildings, and shops and cars and engine-houses and appendages, and lay out, construct and build a branch railroad from their main line to said property ; and said company and its officers shall have the supervision and control of the wharves, piers, canals, buildings and other improvements which they may erect on the said property, and may charge such wharfage and other rates for the use thereof as the directors may deem reasonable, or as may be agreed upon with the parties desiring to use the same ; and all acts and parts of acts heretofore passed, which subject such lands, if exceeding a certain quantity, to any other tax than that which is imposed upon said companies respectively by their respective charters or acts of incorporation, are hereby repealed ; provided, however, that such parts of said property, and the improvements to be made thereon as shall be used for other than railroad, canal, depot, tranship-

ping or landing purposes (but no other portions thereof) shall be subject to local and municipal taxation."

The consideration paid by the grantees to the state for these lands was $500,000.

In 1878 the prosecutors built upon the aforesaid blocks an elevator for the transhipping of grain. The city of Jersey City assessed upon this land for municipal purposes the taxes in question. The relators claim that the property is exempt from this local taxation under the provision of the grant which has been stated. The defendants insist that the use of this portion of the property for an elevator is the use of it for other than railroad, canal, depot, transhipping or landing purposes, and therefore not within the exemption.

It appears in the evidence that the elevator is used for transhipping grain and relieving cars of their lading. The elevator does by machinery what was before done by hand, and appears to be one of the necessary terminal facilities of a railroad engaged in the transportation of large quantities of grain. It further appears that the grain passing through this elevator, if not called for by the consignee, is retained there, and if it remains in store for over ten days a charge is made of one-quarter of a cent per bushel for each ten days thereafter. Before the elevator was built grain was sometimes detained in the cars, and when so detained a demurrage charge of $5 or $10 a day per car, or two cents per bushel, was paid by the consignee. Other trunk lines to the west had erected elevators prior to the erection of the one in question. They are used as freight-houses for grain, and seem to be as indispensable to the railroads in handling the immense quantity of grain which they carry as any other freight-houses used for the reception or unloading of merchandise transported.

If grain was allowed to remain in the elevator until called for, without charge, it would unquestionably be an appliance for railroad purposes. The fact that a small penalty is added to the freight charge to induce shippers to remove their grain within a reasonable time does not withdraw this structure from that class of improvements which are necessary for railroad

uses, within the meaning of that term as construed in *State, New Jersey Railroad, pros.,* v. *Hancock, Collector,* 6 *Vroom* 537.

A rule far less liberal to railroad corporations has been adopted in Pennsylvania.

In *Railroad* v. *Berks County,* 6 *Penna. St.* 70, the court say " that it is only such property belonging to corporations, and which is appurtenant and indispensable to its construction and fitting it for use, that can claim exemption from taxation. It is not enough that it is a convenient possession, or that it affords facilities in carrying on the business of the company. It would be convenient and desirable for the company to own warehouses, coal-yards, coal-shutes and machine-shops at many points on the road. But.these erections and conveniences form no part of the road. They are necessary and indispensable facilities to increase the business of the road, and to enable the company to make profits."

In this case the court exempted from taxation depots, offices, oil-houses and water-stations, in the view that such structures might fairly be deemed necessary and indispensable to the construction of the road, but imposed the burden on warehouses, coal-shutes, machine-shops and wood-yards, on the ground that they formed no part of the construction of the road ; that they were not appurtenant to the road, but to the business done upon it. *Commissioners of Wayne* v. *Delaware and Hudson Canal,* 15 *Penna. St.* 351, is to the like effect.

In *Erie County* v. *Erie and Western Company,* 87 *Penna. St.* 434, the Supreme Court of Pennsylvania re-affirmed the doctrine of the two cases above cited, and held that grain elevators were not exempt from taxation, on the ground that those things only are exempt which enter into the very composition of the works of such corporations, and without which they could not exercise their corporate functions. The distinction between what entered into the construction of a railroad and what is used only as a means for carrying on its business, was adhered to.

I am unable to reconcile these cases with the rule of con-

struction adopted by our court of last resort in the case before cited from 6 *Vroom.*

If, however, any doubt existed as to the meaning of the words "for railroad purposes," as used in the exemption clause of the act of 1868, it would be removed by reference to the preamble of the act. The preamble recites : " That whereas the United Companies require for the accommodation of their business more room for depot, storage and other railroad and canal purposes, at Jersey City." Thus the legislature expressly recognized the appropriation of the land to storage as a use of it for railroad purposes. At the time of the passage of this act the United Companies had constructed their road to Jersey City. It was not for the construction of the road that the grant was made, but it was, as expressly set forth, to give greater facilities for the accommodation of the business of the road. Room for depots and room for storage were classed together as necessary railroad uses.

The legislature must be deemed to have used the words " railroad purposes," in the clause exempting from taxation, with the meaning given to them in the preamble to the act.

The land, therefore, is not deprived of immunity from taxation by the erection of an elevator upon it.

No legislative enactment can, without the assent of the grantees, deprive them of the benefit of the contract which guarantees this exemption from taxation. Nor is there any substantial basis for the contention that the exemption was swept away by the adoption of that amendment to the constitution which declares that " property shall be assessed for taxes under general laws, and by uniform rules, according to its true value."

*State, North Ward Bank, pros.,* v. *Newark,* 11 *Vroom* 558, holds that no legislation is necessary to enforce this provision ; that it went into effect immediately on its adoption, and operated as an abrogation of all special laws for assessing property for taxes. There has been no judicial declaration that a contract like the one in question can be, or has been, abrogated or annulled by constitutional amendment.

A state constitution is a law within the meaning of that clause of the constitution of the United States which ordains that " no state shall pass any law impairing the obligation of contracts." *Dodge* v. *Woolsey,* 18 *How.* 331 ; *Lehigh Valley Railroad* v. *McFarlan,* 4 *Stew. Eq.* 706, 723.

The effect given to this amendment in the recent railroad tax decisions is not that all property must be taxed, but that all property selected for taxation must be assessed under general laws, and by uniform rules, according to its true value.

Finally, it is insisted that the exempting clause in the second section of the act of 1868 is repugnant to that provision of the constitution which declares that " every law shall embrace but one object, and that shall be expressed in its title."

The provisions in certain railroad charters for exemption from taxation, or for special modes of taxation, have never, on this ground, been successfully assailed in this state.

There is nothing in the title of any of those charters which expressly indicates that they contain any such peculiar provisions. It has been the practice so generally in railroad charters to make special provisions in respect to taxation, that no one should be surprised at the presence of the exempting clause in the act before us. The title is sufficient, according to the rule laid down in *Walter* v. *Town of Union,* 4 *Vroom* 350.

But if a defect in the title of the act existed in this respect, the defendant corporation is precluded from taking advantage of it. The act of 1868 cannot be treated as an ordinary act of legislation. It is something more ; it is a contract between the state and the United Companies, by which, for a stipulated price, lands are conveyed to the companies upon certain terms and conditions therein specified. The state has accepted the payment of the full consideration from its grantee, and is not now in a position either to repudiate or to permit any of its political subdivisions to repudiate any of the terms of the contract which enure to the benefit of the grantee.

The assessments certified should, in my judgment, be set aside.

On account of engagements in the Circuit, Mr. Justice Parker took no part in the decision of this case.