# Norfolk & Western Railway Company, Appellant, *v.* Swift & Company.

*Railroads—Demurrage—Private cars—Siding or switch.*

Where a railroad company constructs a side or spur track (as a service track, so used at the time demurrage charges were incurred) to the plant of the defendant, the cost of construction to be paid by defendant, but title and ownership of the rails, etc., to be and remain in the railway company, private cars of the defendant are subject while detained, loaded with interstate commerce merchandise, beyond free time on such side or spur track to the demurrage tariff filed and published according to the Interstate Commerce Act: and this is the case although at the time the demurrage accrued, the tracks were used exclusively for the business of the defendant's plant.

Argued Dec. 12, 1913. Appeal, No. 185, Oct. T., 1913, by plaintiff, from order of C. P. No. 1, Phila. Co., Sept. Term, 1912, No. 394, discharging rule for judgment for want of a sufficient affidavit of defense in case of Norfolk & Western Railway Company v. Swift & Company.

---

[1] For concurring opinion in this case see 57 Pa. Superior Ct. 128.

Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ.   Reversed.

Assumpsit for demurrage.

From the record it appeared that on November 26, 1902, the Norfolk & Western Railway Company entered into a contract in writing with Swift and Co. which recited that the railroad company had constructed, or was about to construct a side or spur track to the plant of Swift & Company at Elkhorn, West Virginia, a distance of about 250 feet in length.

The material portions of the contract were as follows:

3. The title in and to and the ownership of the rails, ties, fastenings and all other material of every kind and description used in the construction of the said track are and shall remain in the railway company, and the railway company, its agents, servants and employees, shall have the right at any time peaceably to enter upon the premises of said party of the second part for the purpose of taking up and removing said track, whenever it may determine, under the terms of this agreement, to remove the same.

4. The party of the second part shall promptly load and unload at its own cost, any and all cars which may be moved to and from its plant or other point designated by it on the said track, consigned to or by it; and the said cars shall be subject to car service rules, except such cars as belong to the Swift Refrigerator Line standing on tracks set aside for that purpose. All cars placed upon the said track, on the property of the party of the second part, shall be returned to the railway company in the same condition as when delivered, unless injured without fault on the part of the said party of the second part, its agents or employees, and in the event of the destruction of any of said cars while on the property of said party of the second part due to the negligence or fault of said party of the second part, its agents or employees, the said party of the second part

will make good to the railway company all loss occasioned by such destruction, but the said party of the second part is not to be responsible for loss or damage to said cars occasioned by the negligence of the railway company, its agents or employees. . . .

6. The party of the second part shall, before said side or spur track is constructed by the railway company, pay to it the cost of such construction, including all materials, switches, frogs and all appliances reasonably necessary to its operation and maintenance, and also cost of labor, as per the estimate of the chief engineer of the railway company; provided, that when said side or spur track has been constructed, it is found that such estimate is in excess of the actual cost of the construction thereof, such excess shall be refunded to the party of the second part; or, if below the actual cost, such deficiency shall be paid by the party of the second part.

7. The railway company may use such side or spur track in connection with any extension of the same which it may construct for the purpose of reaching business and industries other than the business and industries of the party of the second part, and that it may handle and transport the business of others, either upon or along said side or spur track, and any extension thereof; and it is distinctly understood and agreed that the said railway company shall not be deemed to have waived or restricted by anything herein contained, its exclusive power and right to control and operate the said side or spur track, to extend the same from time to time at its option, or otherwise to exercise its ownership or franchises in and about the same, in all respects as if the said right of way had been acquired and the said side or spur track had been acquired or constructed at the original and sole expense of the railway company.

The plaintiff in its statement, claimed to recover demurrage charges accruing between July, 1910, and July, 1912, aggregating $795, in accordance with the demurrage tariff which provided that "private cars under

lading are in railroad service until the lading is removed and the cars are regularly released." The demurrage claimed was on the defendant's private cars.

The affidavit of defense averred that the siding was used exclusively for access to defendant's plant, and that only defendant's own cars had been placed upon the track.

A supplemental affidavit of defense recited sec. 4 of the contract of November 26, 1902, and averred that the siding was set aside by the railroad for the purpose of receiving and standing thereon cars of the Swift Refrigerator Line.

The court discharged the rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was order discharging rule for judgment for want of a sufficient affidavit of defense.

*F. Markoe Rivinus,* with him *Theodore W. Reath,* for appellant.—The title to the rails, etc., of the siding is not by the affidavit and supplemental affidavit of defense denied to have been in the railway company. The published demurrage tariffs apply to the cars of Swift detained by Swift on this siding beyond free time.

That the siding had been used only for Swift's deliveries does not affect the character of the siding as a public facility: Union Lime Co. v. R. R. Comm., 129 N. W. Repr. 605; Pennsylvania R. R. Co. v. Waverly Oil Works Co., (C. P. Allegheny Co. 766 O. T., 1910).

A tariff on demurrages in connection with interstate commerce shipments is exclusively a matter of federal control: Proctor v. U. S., 225 U. S. 282; C., R. I. & P. Ry. Co. v. Hardwick Elevator Co., 226 U. S. 426; Y. & M. V. R. R. Co. v. Greenwood Grocery Co., 227 U. S. 1; St. L., I. M. & S. Ry. Co. v. Edwards, 227 U. S. 265; Penna. R. R. Co. v. Coggins, 38 Pa. Superior Ct. 129; Texas & P. R. Co. v. Abilene Cotton Oil Co., 204 U. S. 426; Robinson v. R. R. Co., 222 U. S. 506.

Demurrage in connection with interstate shipments is

a transportation service governed by sec. 1 of the act to regulate commerce: Penna. R. R. Co. v. Coggins, 38 Pa. Superior Ct. 129.

*M. Hampton Todd,* for appellee.—Where a private side track is built on land leased by a railroad company to the shipper, at his request and at his cost, for the purpose of connecting the plant of the shipper erected on such leased land with the tracks of the railroad company and which side track was used exclusively by the shipper, such track is not a part of the carrier's "railroad" within the meaning of that term as used in the act of congress to regulate commerce: Atchison, T. & S. F. Ry. Co. v. Interstate Commerce Commission, 188 Fed. Repr. 229; Sholl v. Coal Co., 118 Ill. 427 (10 N. E. Repr. 199); Boston & Albany R. R. Co. v. Greenbush Village, 52 N. Y. 510; People v. R. R. Co., 51 N. E. Repr. 312; Chicago & A. Ry. Co. v. United States, 156 Fed. Repr. 558; Proctor v. Cincinnati, etc., Ry. Co., 19 I. C. C. 556; I. C. C. v. Ry. Co., 167 U. S. 633; New York v. Knight, 192 U. S. 21; Clark Bros. Coal Mining Co. v. R. R. Co., 241 Pa. 515; Harp v. R. R. Co., 125 Fed. Rep. 445.

OPINION BY HENDERSON, J., April 20, 1914:

This case comes before us on an appeal from the refusal of the court below to make absolute a rule for judgment for want of a sufficient affidavit of defense. The plaintiff is a railroad company engaged in interstate transportation and delivered to the defendant at its warehouse in West Virginia a large quantity of merchandise belonging to the defendant and consigned to it at the station where the warehouse is located. The merchandise was contained in cars belonging to the defendant, on a railroad switch or siding in proximity to the warehouse. The plaintiff's claim is for demurrage alleged to be due on loaded cars detained by the defendant for a longer time than the free period allowed

by the demurrage tariffs adopted and published by the plaintiff. There is no dispute in regard to the amount of the claim nor any allegation on the part of the defendant that the demurrage regulation is unreasonable as to time or amount. The defense arises out of the construction of two contracts entered into by the plaintiff and defendant dated respectively November 26, 1902, and November 2, 1903, the first of which provided for the construction by the plaintiff of a "side or spur track" to the plant of the defendant a distance of about 250 feet in length and the maintenance and operation of the same, the cost of the construction of which track was to be paid by the defendant as an inducement to the plaintiff to furnish the shipping facility. It was provided in the third paragraph of this contract that the title and ownership of the rails, ties, fastenings and other material of every kind and description used in the construction of the track are and shall remain in the railway company with the right of removal of the same by the railway company whenever it shall deem it advisable so to do. In the seventh paragraph it was agreed that the railway company might use the side or spur track in connection with any extension of the same which it might construct for the purpose of reaching business and industries other than the business and industries of the party of the second part and that it might handle and transport the business of others either upon or along said side or spur track and any extension thereof. It was provided in the fourth paragraph that the Swift Company should promptly load and unload at its own cost all cars. to be moved to and from its plant or other point designated by it on the side track consigned to or by it and that "the said cars shall be subject to car service rules except such cars as belong to the Swift Refrigerator Line standing on tracks set aside for that purpose." The second contract permitted the defendant to locate and maintain a warehouse on land of the plaintiff contiguous to the switch referred

to. The defense presented is that the switch was con-
structed as a trade convenience at the cost of the de-
fendant; that it was used exclusively for shipments to
it; that the cars in use in such shipments were the
private property of the defendant and that therefore
no obligation for demurrage could arise from delay
in unloading the cars at the warehouse. That the cars
would be subject to demurrage unless the defendant is
relieved by the contracts referred to does not seem to be
disputed. That demurrage in interstate commerce busi-
ness is a subject of federal regulation and is a lawful
charge for transportation service under the amendment
of 1906 to the interstate commerce legislation has been
decided in numerous cases: T. & P. R. Co. v. Cotton Oil
Co., 204 U. S. 426; Chicago, R. I. & P. Ry. Co. v. Hard-
wick Elevator Co., 226 U. S. 426; St. Louis, I. M. & S. R.
Co. v. Edwards, 227 U. S. 265; P. R. R. Co. v. Coggins
Co., 38 Pa. Superior Ct. 129. The Interstate Com-
merce Commission is the authority to determine the
reasonableness of the demurrage rates. Robinson v.
B. & O. R. R., 222 U. S. 506; and the Interstate Com-
merce Commission in Proctor v. C. H. & D. Ry. Co., 19
I. C. C. Rep. 556, sustains the demurrage regulation
under which the plaintiff claims. It is provided in
these regulations that private cars while in railroad
service whether on carriers' or private tracks are sub-
ject to the demurrage rules to the same extent as cars
of railroad ownership. Unless the contracts between
the parties relieve the defendant its liability arises under
the demurrage rules. It is averred in the first affidavit
of defense that this siding was used exclusively for the
purpose of making deliveries to the defendant of car
load shipments of meat consigned to it at the station
where the warehouse is located and that all the cars
on which demurrage is claimed are private cars belong-
ing to the defendant except two cars which belong to a
refrigerator line and which the defendant claimed for
the purposes of this case. This averment and that

contained in the supplemental affidavit of defense in which the defendant set up the provision of article four of the contract of November 26, 1902, which excepted such cars from car service rules "as belong to the Swift Refrigerator line standing on tracks set aside for that purpose" present the defense relied on. An examination of these contracts makes it clear that the track in question was for all the purposes of transportation the property of the plaintiff. Notwithstanding the fact that the cost of its construction was borne by the defendant it was as much a part of the line of railway as any other portion of its track. While for the time being it may have been used exclusively for the business of the defendant, ownership of the track was expressly declared to be in the railroad company and it was authorized to extend it and to use it in connection with any other business which might be developed on or along the track or any extension of it. It had exclusive power and right to control and operate it in all respects as if it had been acquired and constructed at the original and sole expense of the railway company. Such are the clear provisions of the agreement between the parties. The defendant's cars were therefore on the track of the plaintiff and were by the tariff regulations subject to the demurrage charge to which other shippers under like circumstances were subject. The defendant had no privilege which permitted it to use its cars when loaded and on the track of the railroad company under more favorable conditions than were accorded to other shippers. We are unable to view the relation of the parties in any light in which it can be seen that the siding in question was the private property of the defendant. It expressly disavowed the title when the arrangement was made for the construction of the track and nothing averred· with reference to the course of business affects this relation. Nor is the defendant aided by the provision in the fourth paragraph of the contract of November 26, 1902, relating to the car

service rules.  The exception therein contained has evident reference to cars not in service but located in places set apart for the storage of cars.  It is provided in the demurrage tariff that empty private cars stored on carriers' or private tracks shall not be subject to demurrage, and the words of the contract read in connection with the demurrage rule show an intention to apply the car service rules to all of the defendant's private cars except those which have been put out of service.  The plaintiff's siding was not constructed for the storage of loaded cars and was not intended to be used for that purpose.  It was a service track and was in use at the time the charges were incurred for which the plaintiff's action was brought.  We are of the opinion, therefore, that the affidavits of defense do not set up a sufficient objection in fact or in law to the plaintiff's claim.

The decree discharging the rule is therefore reversed and the record remitted to the court below with direction to enter judgment for the plaintiff unless other legal or equitable cause be shown to the court below why judgment should not be entered.