## ST. LOUIS, I. M. & S. RY. CO. v. NATIONAL REFINING CO.

### (District Court, N. D. Ohio, E. D.   June 16, 1915.)

### No. 8779.

1. CARRIERS ⬳100—DEMURRAGE CHARGES—SWITCH TRACKS.

The contract between plaintiff railroad and defendant, providing that a switch track shall belong to the railroad, and that it shall be used only for receiving and delivering shipments made to or by defendant, and by plaintiff for any purpose not unreasonably interfering with defendant's shipments, defendant could not use it as a storage track for its own cars without being subject to demurrage charges.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 427–433; Dec. Dig. ⬳100.]

2. CARRIERS ⬳100—DEMURRAGE CHARGES—PRIVATE CARS "IN RAILROAD SERVICE."

Within a freight tariff provision making subject to demurrage charges private cars on private tracks of the owners of the cars, even when engaged in transportation of commodities produced by their owners, if they are then "in railroad service," such cars of defendant on a switch track, which under its contract with plaintiff railroad is to be considered as that of the railroad, are "in railroad service," and subject to such charges; they not only standing to interfere with the use of the track by the railroad allowed by the contract, but the railroad's obligation with respect to them not having ceased, in that it was obliged to haul them to the initial point, and pay wheelage thereon to defendant.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 427–433; Dec. Dig. ⬳100.]

At Law. Action by the St. Louis, Iron Mountain & Southern Railway Company against the National Refining Company. Judgment for plaintiff.

Edward J. White, of St. Louis, Mo., and Henry G. Herbel and Fred G. Wright, both of St. Louis, Mo., for plaintiff.

C. D. Chamberlin and Tolles, Hogsett, Ginn & Morley, all of Cleveland, Ohio, for defendant.

KILLITS, District Judge. [1] The court is of the opinion that demurrage was properly chargeable in each instance submitted to it for consideration. Going to the first cause of action, we cannot construe the contract for switch track between the railway company and the defendant as having any other effect than to make the track for all intents and purposes the property of the railway company.

This is not only the result of section 6 of the contract, in which it is specifically provided that the title to the track, with all material entering into its construction and the roadbed and its appurtenances, should belong to the railroad company, but section 3 also provides very extensive dominance over the track for use by the railway com-

pany in its provision that the track shall be used "only for the purpose of receiving and delivering shipments made to or by the second party [the defendant] and for use by the railway company for any purpose which in the opinion of its general manager does not unreasonably interfere with the shipments of said second party."

Whether the "general manager," who is to decide the extent to which the railway company may use this track, is the general manager of the railway company, or, as seems more probable, that of the defendant, the effect of this language is to restrict the use by the defendant of the track, as against all other uses by the railway company, to shipment purposes only and not storage purposes. It seems clear that the defendant could not use this track as a storage track for its own cars without infringing upon the rights of the railway company as provided by this section 3.

[2] Now, coming to the second cause of action, we find a significant change in the language providing for demurrage on private cars. The older tariff sheets operative under the first cause of action provided more scope for escape from demurrage to private cars than did the tariff in force covering the facts of the second cause of action. We now find that private cars may be subject to demurrage on the private tracks of the owners of the cars, even when they are engaged in the transportation of commodities produced by their owners, if they may be said to be then "in railroad service."

We do not feel called upon to define this term "in railroad service," when it is attempted to be applied to a private car on a private track; but we are clear that, this track being considered to be that of the railroad company, these cars were in railroad service under circumstances such as are exhibited here, for they not only stood to interfere with the use of the track by the railway company under the provisions of section 3 of the contract, but the obligation of the railway company with reference to them had not ceased, in that it was compelled to haul them to the initial point and pay wheelage thereon to the defendant company.

In our judgment, the functions of a demurrage charge can be fully performed only when we hold these cars subject to demurrage, for these tariffs are to be interpreted in the spirit of the law, which requires and attempts to secure service by railroads to all parties without discrimination. The office of a demurrage charge, as we understand it, is not merely to prevent congestion of cars, and to secure to the railroad company a prompt return of its cars, but it is also to assist in lessening the advantage which large shippers might have over those of smaller facilities. Also, in the case before us it is demonstrable that, if the railroad company did not have the weapon of a demurrage charge under circumstances such as these, it would be within the power of the defendant to subject the railroad company to serious inconveniences.