NATIONAL REFINING CO. v. ST. LOUIS, I. M. & S. RY. CO.

(Circuit Court of Appeals, Sixth Circuit.   November 17, 1916.)

No. 2834.

1. CARRIERS ⬤100(1)—CARRIAGE OF GOODS—DEMURRAGE—"PRIVATELY OWNED TRACK."

A demurrage rule of a railroad company declared that it should apply to cars held for or by consignors or consignees, except private cars on the tracks of the owner, when used for transportation of commodities which the owners of cars produce, etc. Defendant granted the company a right of way for a spur track over and across its property, the deed re-

citing that the ownership of the track should be in the railroad company. *Held*, that such track was not, despite any advancing of money therefor, a "privately owned track," and defendant is liable for demurrage on cars held thereon.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 427–430, 432, 433; Dec. Dig. ☞100(1).

For other definitions, see Words and Phrases, Second Series, Private Railroad Track.]

2. CARRIERS ☞100(1)—CARRIAGE OF GOODS—DEMURRAGE—"RAILROAD SERVICE."

A railroad company's demurrage rule declared that it should apply to cars held for or by consignors or consignees for loading or unloading, forwarding directions, or for any other purpose, and that private cars, while in railroad service, whether on the carriers' or private tracks, should be subject thereto. Defendant, the owner of private cars used to transport its products, was entitled to receive from the company under applicable classification compensation "on loaded and empty movement" for use of the cars. *Held*, that such cars were in "railroad service," and defendant, having agreed to promptly load and unload the cars, could not, in view of the purpose of the rule, which is to facilitate shipping, escape demurrage on cars held on tracks for storage purposes beyond the free time allowed.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 427–430, 432, 433; Dec. Dig. ☞100(1).]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; John M. Killits, Judge.

Action by the St. Louis, Iron Mountain & Southern Railway Company against the National Refining Company. There was a judgment for plaintiff (226 Fed. 357), and defendant brings error. Affirmed.

C. D. Chamberlin and Tolles, Hogsett, Ginn & Morley, all of Cleveland, Ohio, for plaintiff in error.

Edward J. White, Henry G. Herbel, and Fred G. Wright, all of St. Louis, Mo., for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and SESSIONS, District Judge.

PER CURIAM. The railway company brought an action, comprising two counts, against the refining company in the court below to recover demurrage charges alleged to have accrued on certain interstate shipments made by defendant in its own cars over plaintiff's railroad to defendant's distributing plant at Little Rock, Ark. The cause was submitted and determined below upon the pleadings and an agreed statement of facts. The charges were assessed because of alleged undue detention of the cars by defendant on a certain spur track. This track had been constructed from plaintiff's railroad right of way and into defendant's premises under a deed of grant from defendant to plaintiff and in pursuance of a written agreement between them. The right of the railway company to recover these demurrage charges must, in view of its demurrage rules, depend upon whether the spur track was the property of the railroad and the cars

were "in railroad service." [1]    The court below determined these questions in favor of the railway company, and 'entered judgment accordingly.    The writ of error is prosecuted to reverse this judgment.

[1] Upon careful consideration of the pleadings and agreed statement of facts, which set out the deed and the written agreement before referred to, we are satisfied that the conclusions, both of fact and law, reached by the learned trial judge and expressed in his opinion (226 Fed. 357, 358) are correct.    According to both the deed and agreement, the ownership of the spur track is in express terms vested in the railway company.    We need not attempt to add to what is said in the opinion below touching the rights of the company in the spur track, unless it be to point out that the written agreement of the parties distinctly provided that the refining company should convey to the railroad company "by easement all the land necessary for the construction of the track  *  *  *,   the said land to be furnished free of cost to the railway company and to be of such width and quantity as may be required by the engineer of the railway company, title to same to be free and unincumbered"; and the deed, entitled "Grant of Easement," appears to have been made in pursuance of the foregoing provision of the agreement.    The deed distinctly grants to the railway company "the right and permission 'to construct, maintain and operate their spur track over and across the property" of the refining company (such property being described), "together with the right to enter upon said property at all times for the purpose of constructing, operating, maintaining, repairing, changing or removing said track, it being expressly understood and agreed that the ownership of the said track, including rails, fastenings and switch fixtures, now or hereafter therein, shall at all times be and remain in" the railway company.    The right of way was laid out and graded, and the spur track was constructed and put into use and operation for, shipment, purposes in connection with the main track of the railroad; and while certain details of construction, advancing of money therefor, and the like, are made use of in argument, we do not think these details were intended to change, or had the effect of changing,

[1] The following demurrage rule is relied on by the railroad in support of the first count of the petition:

"Cars held for or by consignors or consignees for loading, unloading, forwarding directions, or for any other purpose, are subject to these demurrage rules, except as follows:

"(C) Private cars on tracks of the owner, or on privately owned tracks of the consignor or consignee, when used for the transportation of commodities which the owners of the cars produce or in which they deal.  (See Note.)

"Note.—This exception will include also such cars owned and leased to shippers by private corporations."

The following is the form of demurrage rule relied on under the second count:

"Cars held for or by consignors or consignees for loading or unloading, forwarding directions, or for any other purpose, are subject to these demurrage rules."

"Note.—Private cars, while in railroad service, whether on carrier's or private tracks, are subject to these demurrage rules to the same extent as cars of railroad ownership."

the obvious purpose as originally expressed to vest the spur track in the railway company as its property. It results that the shipments in question in the first count fall within the demurrage rule first quoted (note 1, supra), and not within the exception thereto; for while the cars containing the shipments were private cars of the defendant and used for the transportation of a commodity produced by it, within the meaning of the exception, they were on a track owned by plaintiff, not by defendant, at the time for which the demurrage charges were assessed.

[2] Furthermore, the portion of the opinion below which treats of the question whether the cars involved in the second count were "in railroad service" may be more readily applied when it is read in connection with the demurrage rule and the note thereto secondly quoted herein (note 1, supra). The expression "in railroad service" is broad and comprehensive, and must be construed with reference to the object to be attained. The object would seem to extend to all cars to which the carrier may resort for the purpose of discharging its duty to supply cars necessary to accommodate the traffic passing over its road. The language of the demurrage rule, considered as an entirety, distinctly includes private cars; and unless the carrier has some means of regulating the loading and unloading of available cars, regardless of their ownership, the clear purpose of the demurrage rule is defeated. Hence, when a shipper chooses to supply cars for the carriage of freight, even though of a commodity produced by the shipper, this must be done with reasonable reference to the spirit and intent of the demurrage rule. It would seem to be clear enough that if the cars, while standing on this spur track, had been loaded or unloaded through some agency of the railroad, the cars might fairly be said then to have been "in railroad service." This results in principle from decisions like the following: Chicago, etc., Railroad Co. v. Pontius, 157 U. S. 209, 211, 212, 15 Sup. Ct. 585, 39 L. Ed. 675; State v. Minnesota & International Ry. Co., 106 Minn. 176, 181, 118 N. W. 697, 1007, 16 Ann. Cas. 426; Pennsylvania R. R. Co. v. Jersey City, 49 N. J. Law, 540, 542, 9 Atl. 782, 60 Am. Rep. 648; Orendorff v. Railroad Ass'n, 116 Mo. App. 348, 353, 92 S. W. 148. And it ought to follow that these cars were, in respect of the time for which the demurrage charges were assessed, "in railroad service," within the meaning of the demurrage rule. Loading or unloading of cars is of course a necessary incident to their use in ordinary transportation service. Moreover, the written agreement between the parties applies to these cars, as well as all cars similarly situated. The agreement provides, "The said second party (defendant) shall promptly load and unload all cars that may be set for its use upon the said track;" i. e., this spur track. True, these were tank cars which could not except at considerable expense be used for carrying any kind of freight other than defendant's products; but it is agreed that under the applicable railroad classification rule the plaintiff was obligated to pay and was paying the defendant "mileage at the rate of three-fourths of a cent per mile * * * on loaded and empty movement" for the use of the cars. Plainly the defendant could

not both let the cars to plaintiff for the purpose of transporting defendant's commodity, and hold them for purposes of storage; such a course would destroy any workable arrangement made for the supply of equipment. R. R. Com. of Ohio v. H. V. Ry. Co., 12 Interst. Com. R. 398, 410, 411; Interstate Com. Comm. v. Ill. Cent. R. R., 215 U. S. 452, 30 Sup. Ct. 155, 54 L. Ed. 280. It would also be inconsistent with the spirit and intent of defendant's obligation "promptly" to "load and unload" the cars. Further, it is agreed by the parties that under the demurrage rules defendant was allowed 48 hours "free time in which cars delivered to it and placed for unloading may be unloaded." This limitation, quite as certainly as the mileage charge, is included in defendant's consent to the plaintiff's use of the cars for transportation purposes; and it is not perceived why the advantage of the mileage charge can be received except subject to the "free time" limitation. The defendant, therefore, as the owner of these cars, is not in a position rightfully to claim an advantage as a shipper which would not accrue if the cars were owned by another person. Indeed, the charges involved in the second count, as well as those in the first count, are in principle sanctioned by the decision in Procter & Gamble Co. v. C., H. & D. Ry. Co., 19 Interst. Com. R. 556, which was affirmed on its merits by the recent Commerce Court, 188 Fed. 221. True, it was held that the action of the Interstate Commerce Commission there in issue was not within the jurisdiction of the Commerce Court (225 U. S. 282, 32 Sup. Ct. 761, 56 L. Ed. 1091); but nothing is said in the decision of the Supreme Court which affects the reasoning of the Commerce Court upon the merits of the demurrage charges involved. See, also, Norfolk & W. Ry. Co. v. Swift & Co., 56 Pa. Super. Ct. 471, 477, 478; State ex rel. v. C., N. O. & T. P. Ry. Co., 47 Ohio St. 130, 140, 23 N. E. 928, 7 L. R. A. 319. Indeed, it is not suggested nor perceived why this spur track does not possess attributes of a public character in the sense that the railroad company would be bound to deliver or receive cars thereon, regardless of their ownership, which contain freight consigned either to or by the refining company. Chicago & N. W. R. Co. v. Morehouse, 112 Wis. 1, 11, 87 N. W. 849, 56 L. R. A. 240, 88 Am. St. Rep. 918 et seq.; Hairston v. Danville & Western Railway, 208 U. S. 598, 608, 28 Sup. Ct. 331, 52 L. Ed. 637, 13 Ann. Cas. 1008; Chicago Dock Co. v. Garrity, 115 Ill. 155, 167, 3 N. E. 448. See Los Angeles Switching Case, 234 U. S. 294, 306, 311, 34 Sup. Ct. 814, 58 L. Ed. 1319. And it hardly would be denied that as to such cars the demurrage rules and charges in question would be applicable.

The judgment is affirmed, with costs.