PITTSBURGH, C., C. & ST. L. RY. CO. v. FREEDOM OIL WORKS.

(District Court, W. D. Pennsylvania.)

1. CARRIERS ☞100(1)—CARRIAGE OF GOODS—REGULATIONS—DEMURRAGE.
    As the prompt movement of cars is necessary to carry on the business of carriers, as well as to prevent discrimination among shippers, a carrier may impose demurrage charges on privately owned tank cars used in its business.

2. CARRIERS ☞100(1)—DEMURRAGE CHARGES—OWNERSHIP OF PRIVATE TRACKS—"TRANSPORTATION."
    Interstate Commerce Act Feb. 4, 1887, c. 104, §§ 1, 6, 24 Stat. 379, 380, as amended by Act June 29, 1906, c. 3591, §§ 1, 2, 34 Stat. 584, 586 (Comp.

St. 1916, §§ 8563, 8569), defines transportation as including all services in connection with the receipt, delivery, elevation, transfer in transit, ventilation and refrigeration, storage and handling of property transported and forbids a carrier to extend to any shipper or person, any privileges or facilities, except such as are specified in the tariffs. Plaintiff railroad company filed with the Interstate Commerce Commission tariffs and schedules providing for demurrage and storage charges on shipments of explosives on car lot and less than car lot shipments. Under an agreement with defendant, plaintiff constructed a side track located partly on its property and partly on that of defendant; the contract providing that plaintiff should have the right to use, without cost, the whole or any part of the siding in connection with other business than that of defendant, provided that such use should not interfere with defendant's business. Privately owned tank cars, on which plaintiff paid a rental computed by mileage, were held by defendant on the siding for longer than the free time. *Held* that, as the purpose of the Interstate Commerce Act is to prevent discrimination, or the giving of services or facilities to special shippers or persons, plaintiff was entitled to charge demurrage and storage on such privately owned tank cars, though they were stored on the track on the siding, title to part of which was in defendant.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Transportation.]

3. CARRIERS ☞100(1)—DEMURRAGE—STORAGE CHARGE—CAR SHIPMENTS.

The tariffs and rules of plaintiff railway company filed with the Interstate Commerce Commission provided under head "Storage" that carload shipments of explosives or other dangerous articles should be subject to both demurrage and storage charges, while another rule provided that on less than carload shipments of the more dangerous explosives unloaded in or on railroad premises 25 cents per 100 pounds should be charged for storage for each day of 24 hours in which the articles were held in excess of the free time, while on carload shipments $5 per day, in addition to the regular demurrage charges, should be collected. Less charges were prescribed for the storage of the less dangerous and relatively safe explosives. *Held* that, under the rules, the railroad company could, where gasoline was stored in tank cars on siding, collect both demurrage charges and storage; the rule being different as to less than carload lots unloaded on the railroad premises.

At Law. Action by the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, against the Freedom Oil Works, a corporation. On rule for judgment for want of sufficient affidavit of defense. Rule made absolute.

R. H. Hawkins, of Pittsburgh, Pa., for plaintiff.
F. G. Moorhead, of Beaver, Pa., for defendant.

THOMSON, District Judge. In this action plaintiff seeks to recover certain storage charges, accruing under interstate shipments and by virtue of storage rules and charges applying to interstate shipments, which rules are duly filed with the Interstate Commerce Commission. An affidavit and supplemental affidavit of defense being filed, plaintiff moves for judgment for want of sufficient affidavit of defense. The facts of the case, which are either expressly admitted or not denied by the defendant, are as follows:

The plaintiff corporation is engaged as a common carrier of freight and passengers into and through the states of Pennsylvania, West Vir-

ginia, Ohio, Indiana, and Illinois, and in the transportation of freight and passengers to and from various points in other states by reason of connections with other carriers. The defendant is a corporation of Pennsylvania, having its principal place of business at Freedom, Beaver county, Pa. The line of the plaintiff's railroad extends through Newark, Ohio, at which point the defendant company has a private siding, constructed so as to furnish transportation facilities to the defendant's plant to and from the tracks of the plaintiff company. The said siding was constructed under the terms of a written agreement between the parties, dated March 1, 1905, which is attached to and made a part of the plaintiff's statement. The siding so constructed runs for 180 feet on the land of the railroad company and for a distance of about 90 feet on the land of the defendant company; the ownership of the track being so vested that each party owns that part of the track which is upon its own property. The plaintiff, between February 15 and December 28, 1916, delivered to the defendant at Newark five carload shipments of gasoline, which had been transported over the line of the plaintiff's road and upon the lines of connecting carriers from points beyond the state of Ohio. The cars were not owned by the railroad, but by other corporations, the names of the owners, the numbers of the cars, the date and hour of their arrival, the date the same were placed in storage, the date when they were released, and the rate of storage, being set forth in an exhibit attached to the statement of claim.

Under Official Classification No. 43, issued on January 1, 1916, and effective until February 1, 1917, gasoline, when transported in tanks and by carload lots, is listed and classified as a so-called "dangerous article," and the said classification was duly issued, published, and filed by the railroad company with the Interstate Commerce Commission. The plaintiff company issued, published, and filed with the Interstate Commerce Commission, its "local freight tariff of storage rules and charges applying at stations on" its line of railroad, including its line at Newark, Ohio. The same was filed with the Interstate Commerce Commission as "P-675," and provides for "charges for storage on explosives and other dangerous articles"; and rule 6 thereof provides that "storage will be charged at the following rates per day of twenty-four hours or fraction thereof, on explosives or other dangerous articles held in excess of free time allowed." Rule 6b makes the charge "on carload shipments two dollars per day (Sunday and legal holidays excluded) in addition to the regular demurrage charges." A copy of the plaintiff's tariff so filed is attached to the plaintiff's statement. The storage sued for is for storage upon that part of the siding located upon the land of the defendant company.

[1, 2] The Interstate Commerce Act defines transportation as including "all services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration or icing, storage, and handling of property transported." Comp. St. 1916, § 8563. No carrier is permitted "to extend to any shipper or person any privileges or facilities of transportation except such as are specified in such tariffs." Section 8569. The act is intended to prevent discrimination or the

giving of services or facilities to special shippers or patrons. Southern Ry. Co. v. Prescott, 240 U. S. 632, 36 Sup. Ct. 469, 60 L. Ed. 836. As the railways do not have sufficient tank cars of their own, it is a general practice to secure them from private owners; the carrier paying mileage at the rate of three-fourths of one cent per mile. Official Classification No. 44, Rule 29.

In this case, as appears by the contract, while each party owns the track on its own property, the railroad has the right to use without cost the whole or any part of said siding in connection with other business than of the defendant, when the same is not occupied by it; provided that such use of the siding does not interfere with the business of the defendant. The defendant also agreed that it would not permit or authorize the use of said track by or for the benefit of any person not a party to the contract.

In St. Louis, I. M. & S. Ry. Co. v. National Refining Co. (D. C.) 226 Fed. 357, under a very similar agreement, it was held that demurrage should be paid upon private cars while kept upon the siding; that the law seeks to secure service by railroads to all parties without discrimination, and that the tariffs are to be interpreted in the spirit of the law which seeks to accomplish that end; that the office of the demurrage charge is not merely to prevent congestion of cars, and to secure their prompt return, but to assist in lessening the advantage which large shippers might have over those of smaller facilities.

In Proctor & Gamble Co. v. United States (Com. Ct.) 188 Fed. 221, the court held that carriers might impose as a condition of hauling private cars reasonable regulations, and that the exaction of demurrage charges for such cars was not arbitrary or unjust; that the carriers have a right to require that there be a reasonably dependable supply, and that such cars shall not be withdrawn at will to serve private purposes, but must be kept in active use that transportation facilities may be supplied, not to one shipper only, but equitably and without discrimination, to all. This the demurrage charge, by making delay expensive, is calculated to overcome, and hence may be justly imposed.

In Pennsylvania R. Co. v. Waverly Oil Works Co., 58 Pa. Super. Ct. 154, it was held that a railroad company could collect demurrage charges on private cars while detained on a private siding, although the railroad company had no ownership or interest in the siding; that the fact that the private siding was used did not give the consignee control over the cars of other corporations or parties.

These decisions are in line with the holding of Commissioner McChord in Pittsburgh & Ohio Mining Co. v. B. & O., 40 Interst. Com. Com'n. R. 408. The Supreme Court of the United States in Swift Co. v. Hocking Valley Ry. Co., 243 U. S. 287, 37 Sup. Ct. 287, 61 L. Ed. 722, held that the cars, though privately owned, while on the switch in question were on the track owned by the railroad company, and were therefore still in the railroad service while under lading; that transportation, within the meaning of the act to regulate commerce, had not ended; and that a charge for detention of a private car and use of a railroad track, made under such circumstances, was reasonable. The court in this case did not pass on the correctness of the rul-

ing of the Supreme Court of Ohio, which held, assuming the track in question to be a private track, that:

"Demurrage rules, relating to private cars employed in interstate commerce and the charges assessable thereunder, are matters properly included in the tariff or schedule required to be filed and published. This tariff, containing the demurrage rule, having been filed and published according to law, was binding alike on carrier and shipper, and so long as it was in force was to be treated as though it were a statute. * * * This rule having been approved by a federal tribunal, acting within the scope of its authority, its decision must be followed by the courts of this state and is to be given full force and effect." 93 Ohio St. 143, 112 N. E. 212, L. R. A. 1917E, 916.

[3] I am of opinion that the facts of the case, so far as they relate to the private ownership of the cars, and the relation of the parties to the track on which they were stored, are not sufficient to prevent a recovery. But, beyond this question, it is claimed by the defendant that the railroad company is not entitled to collect both demurrage and storage at the same time, and that, the demurrage having been paid, storage cannot be collected; that demurrage applies from the expiration of the "free time" until the car is unloaded, and that storage begins when the commodity is unloaded and continues until it is taken away by the consignee; that rule 6 contains no provision in regard to storage of loaded cars. I cannot agree with this conclusion. Under the head of "Storage," rule 1a provides:

"Carload shipments of explosives or other dangerous articles are subject to both demurrage and storage rules. (See rule 6.) B. Other carload freight, held in cars for delivery and subsequently unloaded, is subject to demurrage rules while in cars and to these storage rules after it is unloaded."

Thus a clear distinction is made between explosives, or other dangerous articles, and other carload freight. Turning to rule 6, we find the following provisions:

"Storage will be charged at the following rates per day of twenty-four hours or fraction thereof, on explosives or other dangerous articles held in excess of free time allowed:

"A. On less than carload shipments of the more dangerous explosives [naming them], unloaded in or on railroad premises, twenty-five cents per hundred pounds.

"On carload shipments five dollars per day in addition to the regular demurrage charges.

"B. On less than carload shipments of the less dangerous and relatively safe explosives [naming them], or less than carload shipments of dangerous articles other than explosives, unloaded in or on railroad premises, ten cents per hundred pounds.

"On carload shipments two dollars per day (Sundays and holidays excluded) in addition to the regular demurrage charges."

From this rule, it is clear that a distinction is made as to storage charges between carload and less than carload shipments on explosives and dangerous articles, in two particulars: (1) On less than carload shipments, storage is charged only when unloaded on railroad premises. In that case, when the demurrage ends, the storage charge begins; while in carload shipments the storage charge is not dependent on the unloading of the car, but is made in addition to the regular de-

murrage charges. From the foregoing considerations, it follows that the plaintiff is entitled to judgment for its claim.

The rule for judgment for want of a sufficient affidavit of defense is therefore made absolute.